UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI DAWN RUDOLPH,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　　　　　Defendant. | Case No.: 3:21-cv-00919-H-AGS<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER CONSIDERATION.**<br><br>[Doc. Nos. 17, 22.] |

On May 13, 2021, Plaintiff Toni Dawn Rudolph ("Plaintiff") filed a complaint against Defendant Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), seeking judicial review of an administrative denial of disability benefits under the Social Security Act ("SSA"). (Doc. No. 1.) On January 28, 2022, the Commissioner lodged the administrative record. (Doc. No. 11.) On April 26, 2022, Plaintiff filed a motion for summary judgment. (Doc. No. 17.) On June 23, 2022, the Commissioner filed a cross-motion for summary judgment and opposition to Plaintiff's motion. (Doc. No. 22.) The

---

[1] Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is substituted for her predecessor, Andrew Saul, Commissioner of Social Security, pursuant to Fed. R. Civ. P. 25(d).

1

Court held a hearing on the motion for summary judgment on July 25, 2022. (Doc. No. 24.) Denise Haley appeared on behalf of the Plaintiff and Tina Naicker appeared on behalf of the Commissioner. For the reasons below, the Court grants in part Plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and vacates and remands the Commissioner's decision.

## BACKGROUND

Plaintiff was born in 1962. (Administrative Record ("AR") 299.) Plaintiff last worked in March 2019 as a delivery driver. (AR 259.) Prior to that employment, Plaintiff worked part-time as a fruit arranger for a fruit bouquet business for two months in 2018, a delivery driver from May 2015 to October 2016, a caregiver from 2006 to August 2013, and a dog groomer from February 2002 to September 2005. (Id.) She has a high school education, and she was enrolled in an online college at the time of her claim hearing. (Id. at 55-56.)

On May 8, 2019, Plaintiff filed an application pursuant to Title II of SSA for disability insurance benefits and an application pursuant to Title XVI of the SSA for Supplemental Security Income benefits. (Id. at 38, 202-226, 250-51.) In her application for disability benefits, Plaintiff asserted disability resulting from neuropathy, chronic obstructive pulmonary disease ("COPD"), asthma, obesity (weight 292 pounds), hypertension, hyperlipodemia, lymphedema in both legs, venuous thromboembolism in her left leg, and a history of breast cancer. (Id. at 204, 251.)

On July 9, 2019, the Commissioner denied Plaintiff's application. (Id. at 114-17.) On September 12, 2019, the Commissioner denied Plaintiff's application for reconsideration. (Id. at 130-36.) On September 25, 2019, Plaintiff requested a hearing on the benefit determination. (Id. at 137-38.) On July 21, 2020, Administrative Law Judge ("ALJ") Howard K. Treblin held a hearing on Plaintiff's claim. (Id. at 52.) Plaintiff appeared at the hearing and was represented by Attorney Ms. Nicole Steinhaus. (Id.) Ms. Gloria Lasoff, a vocational expert, also appeared at the hearing. (Id.)

On September 14, 2020, the ALJ issued a written decision concluding that Plaintiff

was not disabled within the meanings of the SSA from February 15, 2019 through the date of the ALJ's decision. (Id. at 46.)  On November 13, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council. (Id. at 199-201.)  On March 24, 2021, the Appeals Council denied Plaintiff's request for review and finalized the ALJ's decision. (Id. at 1-6.)  Thus, the ALJ decision became the final decision of the Commissioner.

## DISCUSSION

**I.     Legal Standards**

    **A.     Standard for Determining Disability**

In order to be disabled under the SSA, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12 months" and the physical or mental impairments must be of such severity that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d).

A five-step sequential evaluation process is used for determining whether a person is disabled. 20 C.F.R. § 404.1520. The claimant has the burden of proof in the first four steps, but the burden shifts to the Commissioner at step five. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequent, there is no need to consider subsequent steps." Id.

The ALJ determined that the Plaintiff's claim met the requirements of the first three steps but failed at step four. Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC is her ability to perform physical and mental work activities despite limitations from her impairments. In step four, the ALJ evaluates whether the claimant has sufficient RFC to perform her past relevant work. Id. § 404.1520(a)(4)(iv),(f). If so, the ALJ will find the claimant not disabled. Id.

### B. Standard of Review

Claimants can seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). On review, the district court must affirm the Commissioner's decision if it was supported by substantial evidence and proper legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "more than a mere scintilla but less than a preponderance." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court considers the record as a whole, weighing both the evidence that supports and undermines the Commissioner's conclusions. Id. "When the evidence can rationally be interpreted in more than one way, the court must uphold the Commissioner's decision." Mayes v. Massanar, 276 F.3d 453, 459 (9th Cir. 2001).

## II. Analysis

There is no dispute as to the ALJ's determinations on the first three steps. Plaintiff contests the ALJ's decision on her RFC and ability to perform her past work. In particular, Plaintiff argues that the ALJ erred in his credibility determination, his evaluation of her past work, and his conclusion that Plaintiff's RFC allowed her to perform her past work.

### A. The ALJ's Credibility Assessment

The Court begins with a brief review of Plaintiff's testimony concerning her impairments, symptoms, and activities. Plaintiff testified that she experiences neuropathy and numbness and pain in her right arm, hand, fingertips, and feet, which impair her ability to hold objects and manipulate objects, write, walk on uneven pavement, and feel sensations of hot or cold. (AR 57-64.) Plaintiff stated that she could only walk up to 50 feet, or for approximately 20 minutes, before she experiences excruciating pain in her lumbar spine and muscles, pelvis, hips, and legs. (Id. at 57-58, 65.) Plaintiff testified that she can only stand for 15 minutes and can only sit for 30 to 45 minutes because of edema in her legs. (Id. at 58-59, 64.) Plaintiff testified that she could stoop for 1-2 minutes and suggested that she had difficulty moving out of the squatting position due to "knee issues." (Id. at 60.) Plaintiff stated that her asthma and COPD can create an asthma attack when she talks. (Id. at 58.) Plaintiff testified that she could carry one gallon of milk in her

dominant right hand for a "foot [of] distance[.]" (Id. at 59.) Plaintiff stated that she had to lay with her feet elevated in her car "a lot of times" during the day. (Id. at 60.)

Regarding her activities, Plaintiff testified that she spends approximately six hours per day on her studies for her online college courses. (Id. at 61.) She stated that she can perform schoolwork in 45-to-50-minute periods before she must adjust her position. (Id.) With respect to treatment, Plaintiff testified that she wears compression socks on a daily or every-other-day basis for her edema. (Id. at 65.) Plaintiff has also noted that she was prescribed a "compression pump" that she has been instructed to use an hour per day for her edema, but she did not comment on whether she uses the compression pump. (Id.) Plaintiff was prescribed medication for her back pain, but she reported that the medication was insufficient to manage her symptoms. (Id. at 65-66.)

In order "[t]o determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation omitted). The ALJ determined that Plaintiff met the requirements of this step. (AR 43.) Plaintiff does not challenge this aspect of the ALJ's decision.

In the second step of the credibility analysis, an ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036 (internal quotation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (citations omitted). An ALJ may consider a variety of factors in the credibility analysis including: a claimant's reputation for truthfulness; inconsistencies in a claimant's testimony or between a claimant's testimony and a claimant's conduct; a claimant's daily activities; a claimant's work record; testimony from physicians and third parties concerning the nature, severity, effect of the symptoms of which the claimant complains; and an unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment. Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (citations omitted); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ concluded that although Plaintiff's "impairments can support the claimant's subjective complaints of pain and cause her to have some functional limitation, in which limiting the claimant to the light exertional level is reasonable," Plaintiff's "functional limitations are not any more severe as she alleged." (AR 44.) Plaintiff challenges the ALJ's conclusion regarding her credibility on several grounds.

First, Plaintiff asserts that the ALJ errantly found her testimony on the severity of her impairments to be contradicted by her testimony regarding her educational activities. (Doc. No. 17 at 11.) Plaintiff faults the ALJ for failing to consider that her online courses allow her to rest at will, take breaks, and elevate her feet while studying, which are alleviative measures that she claims are not available in the workplace. (Id.)

The ALJ properly considered Plaintiff's testimony regarding her educational activities in his consideration of her credibility. Plaintiff's claim that she studied for 45-minute increments for 6 hours a day contradicted her testimony that she could not sit for long periods of time. (AR 44-45.) Contrary to Plaintiff's suggestion, the ALJ did not err by omitting Plaintiff's need to elevate her feet while she sits as Plaintiff did not testify to that limitation. (Id. at 60-62.) The ALJ specifically found Plaintiff's testimony on her coursework to contradict her claims regarding her capabilities.[2] (Id. at 44-46.)

Second, Plaintiff argues that the ALJ improperly discredited her testimony because

---

[2] Plaintiff contends that the ALJ did not satisfy the grounds for her daily activities to be used for an adverse credibility determination. (Doc. No. 17 at 11-12; Doc. No. 23 at 5-6.) In particular, Plaintiff focuses on the lack of an explanation concerning how her educational activities transfer to the workplace. See Carmickle v. Comm'r, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). But Plaintiff mistakes the ALJ's reasoning. The ALJ does not use Plaintiff's testimony regarding her educational activities as evidence that she can perform in the workplace, but rather, as evidence that her testimony on her limitations is contradictory and not credible.

she declined physical therapy.  (Doc. No. 17 at 12-13; Doc. No. 23 at 4.)  An ALJ is permitted to consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" as a factor in the ALJ's credibility analysis.  Tommasetti, 533 F.3d at 1039.  The ALJ concluded that Plaintiff's "fail[ure] to follow treatment recommendations . . . undermines the claimant's subjective complaints and alleged disability."  (AR 56.)  The ALJ based his finding on a September 19, 2019 healthcare provider note in which a nurse recorded the following:

> "Called patient to review results of lumbar spine MRI, no evidence of malignancy, shows degenerative disc disease.  Encouraged [Primary Care Physician] follow up.  Offered referral to [Physical Therapist] which she declined at this time.  Per patient request, results faxed to her [Primary Care Physician] Dr. Michael McMurray."

(Id. at 697.)  Plaintiff faults the ALJ for not inquiring into the circumstances surrounding Plaintiff's decision to decline treatment.  (Doc. No. 23 at 4.)  But "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes, 276 F.3d at 459-60.  Plaintiff contends that she declined physical therapy because she was undergoing cancer treatments and "homeless and wanted a second opinion[.]"  (Doc. No. 23 at 4.)  But Plaintiff does not cite to a place in the record in which Plaintiff brought these reasons to the attention of the ALJ.  The ALJ did not err by considering Plaintiff's inadequately explained failure to follow a prescribed course of treatment as a factor in his credibility analysis.[3]

Third, Plaintiff contends that the ALJ failed to consider all the evidence in the record

---

[3] Plaintiff argues that the ALJ failed to credit her pursuit of "therapy with stockings and pressure pumps and leg elevation to assist in the management" deep vein thrombosis ("DVT").  (Doc. No. 23 at 4.)  The ALJ found Plaintiff to be noncompliant with the treatment plan for her back pain rather than her DVT.  The Plaintiff does not point to any authority that suggests an ALJ should consider evidence of a claimant following a treatment option for one ailment to contradict or offset a claimant's failure to follow a treatment option for a different ailment.

and to seek additional evidence. (Doc. No. 17 at 13.) Plaintiff states that the ALJ made no attempt to consider Plaintiff's testimony together with the medical evidence in the record. (Doc. No. 17 at 13.) Contrary to Plaintiff's claim, the ALJ considered Plaintiff's medical record in conjunction with her testimony. The ALJ recognized that claimant was diagnosed with chronic embolism; cellulitis in her right leg; and chronic non-occlusive DVT in her left popliteal vein. (AR 44.) The ALJ noted that there was no objective evidence of DVT in Plaintiff's right lower extremity. (Id.) The ALJ also explained that Plaintiff "underwent routine follow-up evaluation of her lower extremity discomfort, swelling, and pain [and] [a] progress note indicates her symptoms initially improved with the persistent lower extremity swelling and discomfort with ambulation . . . ." (Id.)

The Court concludes that the ALJ considered the medical evidence in the record in reaching his assessment of Plaintiff's residual functional capacity. In fact, the ALJ considered the medical records to support the Plaintiff's "subjective complaints of pain and cause her to have some functional limitations[.]" (Id.) The ALJ did not, however, consider the medical records to support Plaintiff's claims regarding the severity of her functional limitations. Plaintiff does not direct the Court to a portion of the medical record that the ALJ failed to weigh in his consideration of Plaintiff's credibility.[4]

Finally, Plaintiff argues that the ALJ improperly relied on the state agency's opinion because it was outdated. (Doc. No. 17 at 13; Doc. No. 23 at 6.) The state agency's last review of the evidence was on May 14, 2019 and the state agency's opinion was issued on September 10, 2019. (Doc. No. 17 at 13.) But, "an updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records." Smith v. Saul, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020). Plaintiff does not point to subsequent objective evidence that would have

---

[4] Plaintiff also faults the ALJ for not developing the record further, but the medical evidence was neither ambiguous nor inadequate. Mayes, 276 F.3d at 459-60.

a material impact of the disability decision.[5]  Id.

The ALJ properly reached his credibility determination regarding Plaintiff's testimony on the basis of substantial evidence and multiple clear-and-convincing rationales.  Lingenfelter, 504 F.3d at 1036.  The ALJ did not make "general findings," Lester, 81 F.3d at 834, but rather specifically showed why he came to his determination by making findings based on the medical record and Plaintiff's testimony.  (AR 42-45.)

### B. Plaintiff's Ability to Return to Past Relevant Work

The ALJ concluded that performance of Plaintiff's past relevant work as a fruit arranger and a caregiver were within her RFC.  (AR 46.)  Plaintiff has the burden of showing that she can no longer perform her past relevant work.  Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002).  A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy.  Id.  An ALJ "may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report."  Id.  The ALJ based his conclusion on Plaintiff's vocational background and the Vocational Expert's testimony.  (AR 46)

First, the Court addresses the fruit arranger position.[6]  The ALJ concluded that Plaintiff could return to her past work as a fruit arranger.  (Id.)  In her brief, Plaintiff argued that her earnings in the fruit arranger position did not meet the requirements of substantial

---

[5] Plaintiff argues that several important medical records post-date the state agency's opinion: (i) an MRI performed on September 18, 2019; (ii) a duplex scan performed on January 9, 2020; and (iii) the prescription of a pump and a cane.  The ALJ considered these records.  The ALJ considered the MRI and Plaintiff's decision not to pursue physical therapy as part of his credibility determination.  (AR 45.)  The ALJ considered the results of the duplex examination with other evidence concerning Plaintiff's ailments.  (Id. at 44.)  Finally, the ALJ considered Plaintiff's use of a cane and her prescription for a compression pump.  (Id. at 42.)

[6] The ALJ equated Plaintiff's past work as a fruit arranger with the position of "Floral Arranger" as defined in the U.S. Department of Labor's *Dictionary of Occupational Titles*.

gainful activity. (Doc. No. 17 at 14.) The Commissioner conceded this point during the Court's hearing. (Doc. No. 24.)

Next, the Court proceeds to consideration of the caregiver occupation. Plaintiff contends that the tasks of a caregiver, as customarily performed and as performed by her in the past, are not within her RFC. (Doc. No. 17 at 14-17; Doc. No. 23 at 7-8.) The ALJ agreed that Plaintiff could not perform the position of caregiver as customarily performed, but he concluded that she could perform the position of caregiver as she had performed it in the past. (AR 46, 67.) At the hearing before the ALJ, the Vocational Expert identified Plaintiff's past work as including caregiver performed at a "light" level. (AR 66.)

Plaintiff asserts that the ALJ erred when he concluded that she could perform the position of caregiver as she had previously performed it. Plaintiff argues that the ALJ incorrectly assessed the difficulty of her caregiver work and failed to resolve a conflict in Plaintiff's vocational records. (Doc. No. 17 at 16.) Plaintiff's vocational history report states that, as a caregiver, Plaintiff carried a laundry basket 20-25 feet daily, dishes 3-5 feet twice daily, a water basin 5-10 feet daily, and grocery bags once per week. (AR 263.) Plaintiff also stated her tasks included the assistance of elderly or infirm people as they perform daily activities such as dressing, bathing, walking, cooking, and cleaning, and that she drove elderly or infirm people to their medical appointments. (Id.) Plaintiff asserts that these tasks do not fit within the "light exertional level" identified by the ALJ. (Id. at 45.) Although Plaintiff's work history notes that the heaviest weight she lifted as a caregiver was 10 pounds, Plaintiff suggests that those weight estimates are an error. (Doc. No. 23 at 7.)

Plaintiff contends that the ALJ should have resolved the discrepancy between her reported tasks, the tasks customary to the caregiver position, and the uncharacteristically light weight estimates on her vocational report form. (Id.) The Court agrees. The record before the ALJ concerning Plaintiff's past work as a caregiver was ambiguous and suitable for further development by the ALJ. Mayes, 276 F.3d at 459-60. The tasks listed by the Plaintiff in her work history form indicate that she performed past work above the "light"

exertional level. (AR 263.) Further, the Court notes that the caregiver position is typically performed at the "medium" exertional level. (Id. at 46). The ALJ never inquired with Plaintiff about her past work as a caregiver. (Id. at 54-66.) Nor did the ALJ inquire with the Vocational Expert about the Plaintiff's past work as a caregiver. (Id. at 66-70.) Plaintiff's health impairments also appear to be in conflict with her past work as a caregiver. The ALJ recognized that Plaintiff experiences functional impediments including: chronic non-occlusive DVT and embolism in her left popliteal vein; severe deep and superficial venous reflux, bilateral femoral and greater saphenous veins; an incompetent perforator in her bilateral lower extremities; and cellulitis her right leg. (Id. at 44.) Plaintiff is nearly 60 years old and weighed 292 pounds at the time of the ALJ hearing, which the ALJ found to be a severe impairment. (Id. at 45, 299, 812.) She experiences health effects from COPD, asthma, a strain in her right rotator cuff, and her history of breast cancer. (Id. at 41, 44.) Taken together, Plaintiff exhibits many impairments that may incompatible with performing the role of a caregiver. The Court concludes that the ALJ should further develop the record as it pertains to Plaintiff's past work as a caregiver. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) ("In Social Security cases[,] the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.") (citation omitted).

### C. Remand is Appropriate

The Court concludes that remand is appropriate here as additional proceedings could remedy the defects in the Commissioner's decision. Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## CONCLUSION

Based on the foregoing, the Court vacates the ALJ's decision and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

DATED: July 26, 2022

MARILYN L. HUFF, Senior District Judge
UNITED STATES DISTRICT COURT